UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ELROY D. CLAY,

    Plaintiff,

Case No. 1:07-cv-555

Hon. Robert J. Jonker

v.

UNKNOWN CATERO, *et al.*,

    Defendants.
            /

**REPORT AND RECOMMENDATION**

    This is a civil rights action brought by a state prisoner pursuant to 42 U.S.C. § 1983. This matter is now before the court on a motion for summary judgment filed by defendant physician assistant (PA) Omar Cantero (docket no. 17).[1]

  **I.**  **Background**

    Plaintiff seeks relief pursuant to 42 U.S.C. § 1983, which confers a private federal right of action against any person who, acting under color of state law, deprives an individual of any right, privilege or immunity secured by the Constitution or federal laws. *Burnett v. Grattan*, 468 U.S. 42, 45 n. 2 (1984); *Stack v. Killian*, 96 F.3d 159, 161 (6th Cir.1996). To state a § 1983 claim, a plaintiff must allege two elements: (1) a deprivation of rights secured by the Constitution and laws of the United States, and (2) that the defendant deprived him of this federal right under color of law. *Jones v. Duncan*, 840 F.2d 359, 360-61 (6th Cir. 1988); 42 U.S.C. § 1983.

---

[1] PA Cantero is also referred to as "Unknown Catero" and "Dr. Catero."

Plaintiff has sued the following defendants: PA Cantero, whom plaintiff identifies as a psychologist at the Riverside Correctional Facility (RCF) in Ionia, Michigan, and two unidentified RFC correctional officers (sometimes referred to as the "John Doe" defendants). Plaintiff sets forth the following allegations in his complaint. He is mentally ill. Compl. at ¶ V. While incarcerated at RCF, he asked PA Cantero to take him off the psychiatric medication (lithium). *Id.* at ¶ IV. PA Cantero refused and increased the dosage, which made plaintiff helpless, "dizzy all the time," extremely weak, and caused poor vision, thyroid problems and diarrhea. *Id.* On May 7, 2006, after plaintiff overdosed on the medication, he was rushed to a hospital in Grand Rapids and diagnosed with lithium toxicity. *Id.* Plaintiff further alleged that on the way to the hospital, two unknown corrections officers "stopped at some house and they took me inside and raped me." *Id.*

Plaintiff submitted copies of records which indicate that he was admitted the hospital on May 7, 2006, with an initial diagnosis of lithium toxicity, hypoglycemia, abnormal urinalysis, renal failure, major depression, post traumatic stress disorder and elevated alkaline phosphatase. *See* docket no. 1-2. He was discharged on May 12, 2006 in stable condition. *Id.* The admission evaluation indicates that plaintiff was unable to give any information due to his sedation and altered mental status, although his chart and nursing observations reflected a history of bipolar disorder with depression and psychosis. *Id.*

Plaintiff does not allege the violation of any particular federal constitutional right. However, the facts alleged in his complaint could be construed as alleging Eighth Amendment violations. Plaintiff seeks monetary damages for pain and suffering and also wants the court to

contact the investigator at "Internal Affairs" in Lansing, Michigan, who interviewed him regarding his claims.

The court dismissed the two John Doe defendants after plaintiff failed to show cause for not serving them with a summons and complaint. Order of Dismissal (docket no. 29). PA Cantero has now moved for summary judgment on the ground that plaintiff failed to exhaust his administrative remedies.

**II.     PA Cantero's motion for summary judgment**

**A.     Legal Standard**

Summary judgment is appropriate "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). In *Copeland v. Machulis*, 57 F.3d 476 (6th Cir. 1995), the court set forth the standard for deciding a motion for summary judgment:

> The moving party bears the initial burden of establishing an absence of evidence to support the nonmoving party's case. Once the moving party has met its burden of production, the nonmoving party cannot rest on its pleadings, but must present significant probative evidence in support of the complaint to defeat the motion for summary judgment. The mere existence of a scintilla of evidence to support plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff.

*Copeland*, 57 F.3d at 478-79 (citations omitted). "In deciding a motion for summary judgment, the court views the factual evidence and draws all reasonable inferences in favor of the nonmoving party." *McLean v. 988011 Ontario Ltd.*, 224 F.3d 797, 800 (6th Cir. 2000). However, the court is not bound to blindly adopt a non-moving party's version of the facts. "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury

3

could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007).

**B.    Exhaustion**

The Prison Litigation Reform Act ("PLRA") 42 U.S.C. § 1997e, provides that a prisoner bringing an action with respect to prison conditions under 42 U.S.C. § 1983 must first exhaust available administrative remedies. *See Porter v. Nussle*, 534 U.S. 516 (2002); *Booth v. Churner*, 532 U.S. 731 (2001). A prisoner must exhaust available administrative remedies, even if the prisoner may not be able to obtain the specific type of relief he seeks in the state administrative process. *See Porter*, 534 U.S. at 520; *Booth*, 532 U.S. at 741. In order to properly exhaust administrative remedies, prisoners must complete the administrative review process in accordance with the deadlines and other applicable procedural rules. *Jones v. Bock*, 549 U.S. 199, 218 (2007); *Woodford v. Ngo*, 548 U.S. 81, 90-91 (2006). "Compliance with prison grievance procedures, therefore, is all that is required by the PLRA to 'properly exhaust.' " *Jones*, 549 U.S. at 218.

The MDOC requires prisoners to follow a three-step process to exhaust grievances. *See* Policy Directive 03.02.130.[2] Before filing a grievance, the prisoner must attempt to resolve a problem with the staff member within two business days of becoming aware of the grievable issue, unless prevented by circumstances beyond his or her control. Policy Directive 03.02.130 at ¶ R. If the issue is not resolved, then the grievant may file a Step I grievance on the prescribed form within five business days after the grievant attempted to resolve the issue with appropriate staff. *Id.* at ¶ X. The Policy Directive provides the following directions for completing grievance forms:

---

[2] Defendant relies on the December 19, 2003 revision of the Policy Directive which was in effect when plaintiff was taken to the hospital on May 7, 2006. *See* docket no. 18-5.

4

> The issues shall be stated briefly. Information provided shall be limited to the facts involving the issue being grieved (i.e., who, what, when, where, why, how). Dates, times, places and names of all those involved in the issue being grieved are to be included.

*Id.* at ¶ T (emphasis in original). If the prisoner is dissatisfied with the Step I response, or does not receive a timely response, he must request the appropriate form and send it to the Step II Grievance Coordinator. *Id.* at ¶ DD. Finally, if a prisoner is dissatisfied with the Step II response, or does not receive a timely response, he must send a completed Step III grievance to the Prisoner Affairs Section. *Id.* at ¶ HH.

The MDOC records reflect that while plaintiff was at RCF, he pursued one grievance through Step III, URF-2007-06-1293-03b ("grievance 1293"). James Armstrong Aff. at ¶¶ 15-16 (docket no. 18-3); grievance record (docket no. 18-4). Plaintiff filed grievance 1293 on June 6, 2007, seeking placement in protective segregation. *Id.* In this grievance, plaintiff complained: that another prisoner, whom plaintiff testified against in a homicide case, sought revenge against him; that plaintiff was stabbed over this matter; and that there was a "$1,500.00 hit" placed on him. *Id.* The grievance was denied at Step III. *Id.* There is no record that plaintiff exhausted any grievances related to any claim against PA Cantero or any other individual with respect to the claims arising from May 7, 2006. *Id.*

In his response, plaintiff asserts that the prison staff denied him the right to file grievances. The response included copies of Step I grievance forms as follows: May 15, 2006 (complaining of failure to respond to May 13th grievance and sexual assault); May 15, 2006 (complaining of failure to respond to May 13th grievance and lithium overdose by PA Cantero); May 20, 2006 (complaining of failure to respond to grievances and sexual assault); May 20, 2006 (complaining of lithium overdose by PA Cantero); June 12, 2006 (complaining of failure to respond

5

to a grievance and lithium overdose by PA Cantero); June 16, 2006 (complaining of failure to respond to a grievance, the lithium overdose by PA Cantero and the sexual assault). *See* docket no. 22-11.[3] Plaintiff has failed to provide a copy of the Step I grievance allegedly dated May 13, 2006. While plaintiff submitted copies of various Step I grievance forms dated May 15th, May 20th, June 12th or June 16th, none of the forms submitted to the court include a grievance number and there is no record of grievances being received by MDOC personnel.

Plaintiff relies on response exhibits 3, 5, 6 and 7 to demonstrate that he was deprived of his right to file a grievance on May 13, 2006. *See* docket nos. 22-5, 22-7, 22-8, 22-9. None of these exhibits support plaintiff's claim. Exhibit 3 consists of a health care request from a different correctional facility (URF) dated December 3, 2006, requesting copies of his emergency room records. *See* docket no. 22-5. Exhibit 5 consists of disciplinary matters occurring in June and July 2006: a misconduct hearing report from July 5, 2006 (plaintiff guilty of disobeying a direct order to return to his cell); a major misconduct report from June 12, 2006 (out of place); a major misconduct report July 5, 2006 (refusing direct order to return to cell); a major misconduct report from July 7, 2006 (refusing direct order to return to cell); a major misconduct report from July 8, 2006 (refusing direct order to return to cell); and a major misconduct report from July 9, 2006 (refusing direct order to return to cell). *See* docket no. 22-7. Exhibit 6 consists of a Step I grievance filed on July 15, 2006, complaining that when he returned from segregation for refusing to return to his unit, he discovered some his property was missing. *See* docket no. 22-8.

---

[3] The electronically scanned copies of these grievance forms are very poor quality copies. *See* docket no. 22-11. For this reason, the court has relied upon the original documents filed in the clerk's office.

Finally, Exhibit 7 consists of a discharge/transfer summary from July 7, 2006, when plaintiff was discharged from the RTP (residential treatment program) at RCF. *See* docket no. 22-9. The discharge/transfer summary indicates that plaintiff was transferred to RCF "because of hallucinations and other psychotic behaviors" and admitted to the RTP "because of adjustment problems in the General Population." *Id.* His mental status, as of July 7, 2006, was alert and oriented in all three spheres, but despondent with a flat affect, displaying paranoid thoughts that staff and inmates were "out to get him," and refusing treatment and medication at RTP. *Id.* Plaintiff has been "let go" from group therapy, has had a problem "with his accusing certain staff of ass[a]ultive behaviors," and "was transferred to the first floor and continued with Case Monitoring x 2 a week." *Id.* Plaintiff has not responded to individual counseling and was "becoming more paranoid." *Id.*

Plaintiff has provided no credible explanation for the prison staff's alleged failure to process the grievance he allegedly submitted on May 13, 2006, or for the staff's failure to process the grievances he allegedly submitted on May 15th, May 20th, June 12th and June 16th. Rather, these exhibits demonstrate that in June and July, 2006: plaintiff was found guilty of refusing to obey staff orders; repeatedly charged with refusing to obey staff orders; and refused treatment for his mental condition.[4]

---

[4] While plaintiff has presented evidence of treatment for a mental condition, he does not explicitly assert mental illness as an excuse for failing to exhaust his administrative remedies. Even if plaintiff had asserted such a claim, it would fail. A prisoner must properly exhaust his administrative remedies in accordance with the deadlines and other applicable procedural rules. *Jones*, 549 U.S. at 218; *Woodford*, 548 U.S. at 90-91. In this regard, courts "will not read futility or other exceptions into [PLRA's] statutory exhaustion requirements." *Booth v. Churner*, 532 U.S. 731, 741 n. 6 (2001) (emphasis added). Thus, courts have concluded that an alleged "mental illness" exception is not available to bypass the "proper exhaustion" requirement. *See Smith v. Corrections Corp. of America, Inc*., 92 Fed. Appx. 649, 650 (10th Cir. 2004) (prisoner could not evade exhaustion requirement because he was taking medication for mental illness and housed in a mental health unit); *Yorkey v. Pettiford*, No. 8:07-1037, 2007 WL 2750068 at *4 (D.S.C. Sept. 20,2007) (court rejected prisoner's assertion that he should be excused from the exhaustion requirement due to mental illness, citing *Woodford* and *Booth*). Furthermore, despite having a history of mental health

7

Plaintiff has also submitted an "affidavit" (docket no. 23) and "declaration" (docket no. 26) in opposition to the motion. Neither of these documents is sufficient to defeat defendants' motion. Plaintiff's purported "affidavit" has no basis in fact, being neither given under oath in the presence of a notary nor made under penalty of perjury pursuant to 28 U.S.C. § 1746. Even if the document was in the proper form, it is argumentative and fails to address plaintiff's claim that prison staff denied him the ability to exhaust his grievances. Plaintiff does not describe the circumstances regarding the submission of his May 13, 2006 grievance, nor does he even attempt to identify the individuals at RCF that allegedly denied him the ability to process grievances at the facility. Plaintiff's 66-page "declaration" consists of a 25-page (largely argumentative) narrative, which is primarily directed at claims of alleged staff misconduct at a different correctional facility in 2009. This declaration is not properly before the court, having been filed after the time set for submitting a response to defendant's motion for summary judgment. Even if the "declaration" was properly before the court, it fails to address plaintiff's claim that RFC staff denied him the ability to exhaust his grievances.

Viewing the evidence in the light most favorable to plaintiff, there is no evidence that plaintiff exhausted a grievance against PA Cantero through Step III. In addition, there is no evidence that prison staff prevented plaintiff from filing a grievance on May 13, 2006 or that staff denied him the ability to exhaust any grievances against PA Cantero. Plaintiff has failed to properly exhaust his administrative remedies as required by the PLRA. *See Jones*, 549 U.S. at 218-19;

---

problems, plaintiff has demonstrated that he understands the three-step grievance procedure and can successfully follow it.

8

*Woodford*, 548 U.S. at 90-93. Accordingly, PA Cantero is entitled to summary judgment due to plaintiff's failure to exhaust his administrative remedies.

**IV.    Recommendation**

For the reasons set forth above, I respectfully recommend that PA Cantero's motion for summary judgment (docket no. 17) be **GRANTED** and this case dismissed.


Dated:  December 14, 2009           /s/ Hugh W. Brenneman, Jr.
                                    HUGH W. BRENNEMAN, JR.
                                    United States Magistrate Judge


ANY OBJECTIONS to this Report and Recommendation must be served and filed with the Clerk of the Court within fourteen (14) days after service of the report. All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b). Failure to serve and file written objections within the specified time waives the right to appeal the District Court's order. *Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).